IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIA ANN CALIPO, | ) | |
| Plaintiff | ) | C.A. No. 16-198 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| ERIE COUNTY PRISON, et al., | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

# MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter

## I.  INTRODUCTION

### A.  Relevant Procedural and Factual History

Plaintiff Julia Ann Calipo, an individual formerly incarcerated at the Erie County Prison in Erie, Pennsylvania,[2] instituted this *pro se* civil rights action on August 1, 2016, pursuant to 42 U.S.C. § 1983. Plaintiff subsequently filed an amended complaint on or about September 6, 2016, which is the operative pleading in this case. Named as Defendants in the amended complaint are: Erie County Prison ("ECP"); Scott Suttern, purportedly a corrections officer at ECP ("Suttern");[3] Cara Plyler, a corrections officer at ECP ("Plyler"); Erie County Executive

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 12, 32].

[2] According to the docket, Plaintiff is currently incarcerated at the State Correctional Facility at Muncy, Pennsylvania.

[3] In Defendants' brief in support of their motion to dismiss, Defendants' counsel notes that there is no corrections officer at ECP named Scott Suttern. (ECF No. 23, at p. 2 n. 1). As a result, Defendant Suttern has not been served in

1

Kathy Dahlkemper ("Dahlkemper"); Erie County District Attorney Jack Daneri ("Daneri"); and Erie County Assistant District Attorneys Nathaniel Strasser ("Strasser"), Elizabeth Hirz ("Hirz"), and Erin Connelly ("Connelly").

In her amended complaint, Plaintiff claims that Defendants violated her civil, constitutional and human rights, as well as her rights under the Americans with Disabilities Act ("ADA"); however, Plaintiff's allegations are rambling and largely incoherent, consisting entirely of the following:

> I am denied rights by District Attorneys, Erie County Prison & County Executive. Nathaniel Strasser discarded ex[culpatory] evidence, cruel punishment tries to intimidate, denies fair trial, speedy trial, discovery, evidentiary hearing, bond, due process, etc. Erie County Prison is cruelly punishing, discriminating, stealing copying legal documents, harassment, perjury, theft, denial of services & medical care. Erin Connoly [sic] denied my right to know public records to ensure Calipo crim[inal] case is lost. This public info will need subpoenas. Kathy Dahlkemper controls the County as a whole, refuses to discipline, do investigations into illegal tactics, derelict of duties. DA Elizabeth Hirz is harassing, filing false legal actions, trying to jail me despite Rule 600. Jack Daneri is the head DA who conspired with Kathy Dahlkemper to file false criminal charges target Plaintiff for his illegal antics. Kathy Dahlkemper favors Allstate for her political and fin[ancial] gain.

(ECF No. 9, Amended Complaint, at Section IV.C).[4] As relief for her claims, Plaintiff requests "[a]n investigation by any and all agencies into corruption by Erie Prison and County Executive Kathy Dahlkemper." (Id., at Section VI).

---

this case, nor has any attorney entered an appearance on his behalf.

[4] The Court notes that Plaintiff's amended complaint, as originally docketed at ECF No. 9, is virtually unreadable; however, Plaintiff later filed a clearer copy of the amended complaint, which is docketed at ECF No. 18. While the Court cites to the originally filed document, reference must be made to ECF No. 18 for clarity.

Defendants have filed a motion to dismiss Plaintiff's complaint arguing, *inter alia*, that: (i) Plaintiff has failed to exhaust her administrative remedies in accordance with the Prison Litigation Reform Act, as to her claims regarding conditions of confinement at ECP; (ii) Plaintiff's claims against Defendants Daneri, Strasser, Hirz, and Connelly are barred by absolute prosecutorial immunity, to the extent said claims may be construed to seek monetary damages; (iii) Plaintiff's claims regarding her criminal proceedings are barred by the Rooker-Feldman Doctrine; (iv) Plaintiff's claims against Defendant Dahlkemper fail to establish Defendant's personal involvement; and (v) Defendant ECP is not a "person" that can be sued under 42 U.S.C. §1983. [ECF No. 22]. Plaintiff has since filed a response to Defendants' motion, entitled a "motion for trial" [ECF No. 27]. This matter is now ripe for consideration.

### B. Standards of Review

#### 1. Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1)

A defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) citing Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.3d 884, 891 (3d Cir. 1977). Since Defendants in this case are challenging this Court's subject matter jurisdiction under Rooker-Feldman, they are invoking a factual challenge. See McCurdy v. Esmonde, 2003 WL 223412, at *4 (E.D.Pa. Jan. 30, 2003) (finding that since "*Rooker-Feldman* turns on whether the issues were or could have been raised in the state court … or whether [they] are inextricably intertwined with the state court judgment," the issues raised by the 12(b)(1) motion were fact-based.)

When a 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, "we are not confined to the allegations in the complaint and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 754 (3d Cir. 2000). Thus, in reviewing a factual attack, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case ... [N]o presumptive truthfulness attaches to plaintiff's allegations." Carpet Group Int'l. v. Oriental Rug Importers Ass'n., 227 F.3d 62, 69 (3d Cir. 2000) citing Mortensen, 549 F.2d at 891. The party asserting subject matter jurisdiction bears the burden of proving that it exists. Id.; cf. Ballentine v. U.S., 486 F.3d 806, 810 (3d Cir. 2007) ("On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.").

### 2. Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the

facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). A Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C.Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the Twombly/Iqbal line of cases:
> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to

> state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) ("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997) (overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Exhaustion

Defendants argue that Plaintiff's conditions of confinement claims should be dismissed for failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[5]

#### 1. The Exhaustion Requirement

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[6] The exhaustion requirement is not a technicality, rather it is

---

[5] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[6] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter

federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[7]

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

---

jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[7] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

## 2. The Administrative Process Available to Erie County Inmates

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218.

ECP's Inmate Handbook, which was provided to Plaintiff at the time of commitment, outlines the grievance procedure inmates are required to follow. (See ECF No. 22-2). First, an inmate desiring to file a formal grievance must submit a written grievance form to the pod counselor within fifteen (15) days after a "potentially grievable event has occurred." (ECF No. 22-2 at pp. 4-5 (internal pp. 41-42)). The grievance is then submitted to the Warden's designee for investigation and response. In the event the grievance is not resolved, the inmate may file an appeal to the Warden within five (5) days of his receipt of the response from the Warden's designee. (Id. at p. 5 (internal p. 42)). The Warden will then issue a final decision affirming, modifying, suspending or reversing the grievance response. (Id.).

## 3. Analysis

In support of their motion to dismiss, Defendants have submitted the Affidavit of Michael Holman, Deputy Warden at ECP, who is responsible for responding to inmate grievances at ECP, among other things. [ECF No. 22-1]. Deputy Holman makes the following pertinent declarations:

    2.    In my capacity as Deputy Warden of the Erie County Prison, I have

> access to all prison records regarding inmates, their medical care and treatment, misconducts and other incidents in which they are involved, grievances they file, responses to grievances, and all other records regarding each inmate's incarceration at the Erie County Prison;
>
> 3. I have reviewed the prison records of Julia Calipo with respect to her commitment at the Erie County Prison on or about January 31, 2016 through the present;
>
> \* \* \*
>
> 15. Julia Calipo is familiar with the prison's grievance procedure and was given a copy of the Erie County Prison Inmate Handbook shortly after her commitment….
>
> 16. With respect to her grievance history, Julia Calipo filed numerous inmate grievances during her commitment at the Erie County Prison [all of which were denied]….
>
> \* \* \*
>
> 17. … Ms. Calipo did not file an appeal of the denial of any of the grievances she filed.

(ECF No. 22-1, Declaration of Deputy Warden Michael Holman, at ¶¶ 2-3, 15-17).

The above declarations of Deputy Warden Holman have not been opposed or contradicted, in any way, by Plaintiff. As a result, the Court finds that Plaintiff has failed to exhaust her administrative remedies with regard to the conditions of confinement claims she seeks to raise in this case, and such claims will be dismissed accordingly.

### D. Discussion

#### 1. Absolute Prosecutorial Immunity

Defendants argue that Plaintiff's claims against Defendants Daneri, Strasser, Hirz, and

Connelly are barred by absolute prosecutorial immunity to the extent Plaintiff may be seeking to recover monetary damages. The Court agrees.

A prosecutor engaged in "activities intimately associated with the judicial phase of the criminal process" is absolutely immune from section 1983 money damages. Imbler v. Pachtman, 424 U.S. 409, 420 (1976). Prosecutors engaged in solely administrative or investigative duties are not likewise immune. Rose v. Bartle, 871 F.2d 331, 343 (3d Cir. 1989). Courts confronted with claims challenging a prosecutor's actions must utilize a functional analysis to determine whether or not the prosecutor acted within his or her "judicial capacity" when attempting to apply absolute immunity. Ross v. Morgan, 638 F.2d 646, 648 (3d Cir. 1981). *See also* Rose v. Bartle, 871 F.2d at 343.

Actions that relate to the prosecutor's role as an advocate are "judicial" actions. Mancini v. Lester, 630 F.2d 990, 993 (3d Cir. 1980). For example, prosecutors are absolutely immune from claims for malicious prosecution, for solicitation of perjured testimony, and for conspiracy with state actors while engaged in an advocacy role. *See* Rose; Imbler; Ross. In fact, a prosecutor's duties extend beyond the actual filing of a lawsuit. In Imbler, the Supreme Court noted that "the duties of the prosecutor in his role as an advocate for the state involve actions preliminary to the initiation of a prosecution and action separate from the courtroom." Imbler, 424 U.S. at 431, n. 33. Thus, prosecutors are absolutely immune from liability for filing false charges or initiating a prosecution, Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992), or for deciding not to initiate a prosecution, Isley v. Bucks County, 549 F. Supp. 160, 161 (E.D. Pa. 1982).

Here, Plaintiff's claims against Defendants Daneri, Strasser, Hirz, and Connelly appear to be solely judicial in nature. As a result, said Defendants are immune from liability under the doctrine of absolute prosecutorial immunity and the claims against them will be dismissed to the extent Plaintiff seeks monetary damages.

### 2. *Rooker-Feldman* Doctrine

Plaintiff's response to Defendants' motion indicates that the crux of her constitutional claims is that she was convicted of "false criminal charges" based on "false evidence," the illegal admission of a prior "bad act," and the disposal of exculpatory evidence. (ECF No. 27, Plaintiff's "Motion for Trial," at ¶¶ 3-4). Thus, Plaintiff maintains that "[s]he will be acquitted at appeal." Id. at ¶ 4). Thus, Plaintiff is essentially asking this Court to recognize that she has been wrongfully convicted and incarcerated as a result of Defendants' alleged misconduct, and to grant her relief accordingly.

The first analysis must be to determine whether or not this court has jurisdiction over the subject matter of this action, as the federal courts are courts of limited jurisdiction. It is well-settled that federal district courts lack subject matter jurisdiction "over suits that are essentially appeals from state-court judgments." Great W. Mining & Mineral Co, v. Fox Rothschild, LLP, 615 F.3d 159, 165 (3d Cir. 2010), cert. denied, 536 U.S. 904 (2011). Under the *Rooker-Feldman* doctrine,[8] a federal district court does not have authority to review the propriety of a state court judgment where the losing party in the state court proceeding complains of injuries from that

---

[8] This doctrine arises out of the decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303 (1983).

judgment. See Gary v. Braddock Cemetary, 517 F.3d 195, 201 (3d Cir. 2008); Moncrief v. Chase Manhattan Mortgage Corp., 275 Fed. Appx. 149 (3d Cir. 2009) (holding that *Rooker-Feldman* applies to claims actually raised in state court, as well as to those that were not raised but are "inextricably intertwined" with the state court adjudication). In general, the *Rooker-Feldman* Doctrine is applicable where the Court must either "determine that the state court judgment was erroneously entered" or "take action that would render that judgment ineffectual" in order to grant Plaintiff the relief he requests. Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 150 (1923).

  The Third Circuit Court has recognized four requirements for applying the jurisdictional bar of the *Rooker-Feldman* doctrine: (1) The federal plaintiff lost in state court; (2) the federal plaintiff complains of injuries caused by the state court judgment; (3) the judgment was rendered before the federal suit was filed; and (4) the federal plaintiff is inviting the district court to review and reject the state judgments. Great W. Mining & Mineral Co., 615 F.3d at 166. All four of these requirements are met in this case.

  Here, Plaintiff claims that her constitutional and civil rights were violated by Defendants' actions in pursuing, allowing and/or condoning her alleged wrongful conviction and imprisonment. Thus, Plaintiff is, in essence, asking this Court to conduct a *de novo* review of all state court proceedings related to her conviction and sentence, in an effort to have her conviction nullified and damages assessed against the individuals and/or entities deemed responsible for the imposition and execution of such judgment. In order to grant such relief, a determination that the state court judgment was erroneous must occur, which would render the state court decision

13

"ineffectual." This is precisely the type of finding *Rooker-Feldman* prevents. Thus, Defendants' motion to dismiss Plaintiff's constitutional claims based on this Court's lack of subject matter jurisdiction will be granted.[9]

### 3. Defendant Dahlkemper

Defendants also move to dismiss Plaintiff's claims against Defendant Dahlkemper based upon said Defendant's lack of personal involvement in the alleged unconstitutional conduct.

It is well-settled that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. See Gould v. Wetzel, 2013 WL 5697866, at *2 (3d Cir. Oct. 21, 2013), citing Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011). This means that the defendant must have played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit … [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Oliver v. Beard, 358 Fed. Appx. 297, 300 (3d Cir. 2009); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." Chinchello, 805 F.2d at 133; Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). Section 1983 liability cannot be predicated solely on the theory of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). See also Monell v.

---

[9] Because the Court is dismissing Plaintiff's constitutional claims on jurisdictional grounds, Defendants' other grounds for dismissing such claims will not be addressed, though they are also found to have merit.

Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's actions); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-95 (3d Cir. 1997) (holding that Section 1983 plaintiff is required to show that supervisor personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

Here, Plaintiff has failed to set forth any factual basis to establish the personal involvement of Defendant Dahlkemper in any alleged unconstitutional conduct. As a result, Plaintiff's claims against said Defendant will be dismissed.

### 4. **Defendant ECP**

Finally, Defendants assert that Plaintiff's claims against Defendant ECP must fail because the prison is not a proper person against whom a civil rights claim may be brought under 42 U.S.C. § 1983. The Court agrees. "In the Third Circuit, it is well-settled that a prison or correctional facility is not a "person" that is subject to suit under federal civil rights laws." Regan v. Upper Darby Twp., 2009 WL 650384 (E.D.Pa. 2009), aff'd 363 Fed. Appx. 917 (3d Cir. 2010) (listing cases). Thus, Plaintiff's claims against Defendant ECP will be dismissed.

### 5. **Defendant Suttern**

As noted earlier, Defendant Suttern was never served in this case, and no attorney has entered an appearance on his behalf. Thus, he has not joined in the pending motion to dismiss. Nonetheless, Section 1915A(b) of the Prison Litigation Reform Act ("PLRA") provides:

> (b) Grounds for dismissal - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A(b). Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so. Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997) ("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or *sua sponte*, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory provisions with respect to actions brought by prisoners who are proceeding *in forma pauperis*. See 28 U.S.C. §1915(e)(2)[10]. Under this provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language. See, e.g., Keener v. Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating *sua sponte* dismissal of *in forma pauperis* actions that are frivolous or fail to state a claim."). In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g.,

---

[10] Title 28 U.S.C. §1915(e)(2) provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under 28 U.S.C. §§ 1915A, 1915(e), and 42 U.S.C. § 1997e(c), the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'").

    Here, Plaintiff has failed to state any allegations or claims against Defendant Suttern in this case upon which relief may be granted. Moreover, even if she had, the Court has already determined that Plaintiff has failed to exhaust her administrative remedies with regard to her conditions of confinement claims, which are the only claims that would apparently apply to Defendant Suttern as an alleged employee of ECP. Thus, Plaintiff's claims against Defendant Suttern will be dismissed, *sua sponte*, pursuant to the authority granted by the PLRA.

    An appropriate Order follows.

/s/ Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
United States Magistrate Judge

Date: April 10, 2017

---

defendant who is immune from such relief."